UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| DAVID BURNS o/b/o J.A.B., a minor, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:13-cv-572 |
| ) | |
| v. ) | Honorable Robert Holmes Bell |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |
| _____) | |

       This is a social security action brought under 42 U.S.C. § 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to child's supplemental security income (SSI) benefits.  On October 19, 2010, David Burns filed an application for SSI benefits on behalf of his daughter, J.A.B., a minor.  Plaintiff claimed a December 1, 1998, onset of disability.[1]  Her claim was denied on initial review.  (A.R. 64-72).  On September 21, 2011, plaintiff received a hearing before an administrative law judge (ALJ), where she was represented by Dannelly Smith, a non-attorney representative.  (A.R. 30-52).  On November 15, 2011, the ALJ issued a decision finding that plaintiff was not disabled.  (A.R. 13-26).  On March 19, 2013, the Appeals Council denied review (A.R. 2-4), and the ALJ's decision became the Commissioner's final decision.

---

    [1]SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004).  The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed.  Thus, November 2010 is plaintiff's earliest possible entitlement to SSI benefits.

On May 23, 2013, plaintiff filed a complaint seeking judicial review of the Commissioner's decision denying her claim for SSI benefits. Plaintiff asks the court to overturn the Commissioner's decision on the following grounds:

1. The ALJ erred when he failed to find that plaintiff met the requirements of listing 112.05D; and

2. The ALJ should have found that plaintiff had "marked limitations" in her ability to manipulate objects.

(Plf. Brief at 3, docket # 12). I recommend that the Commissioner's decision be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within

which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

### **Standard for Finding Disability on a Child's Claim for SSI Benefits**

Under the Work Opportunity Act's standard,[2] a child seeking SSI benefits can establish disability only by showing that she suffers from a medically determinable physical or mental impairment which results in marked and severe functional limitations and lasts for a period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i). "The thrust of the legislation was most certainly to tighten eligibility." *Encarnacion ex rel. George v. Barnhart*, 331 F.3d 78, 83 (2d Cir. 2003). Under the current three-step analysis, the Commissioner must ask: (1) is the claimant engaged in substantial gainful activity?; (2) are the impairments severe?; and (3) do the impairments meet, medically equal, or functionally equal in severity a listed impairment and satisfy the durational

---

[2] Personal Responsibility & Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, §§ 211-12, 100 Stat. 2105, 2188-94 (1996).

requirements?  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d at 125; *see also Barnett v. Commissioner*, No. 13-4391, __ F. App'x __, 2014 WL 3585892, at * 1 (6th Cir. July 22, 2014); 20 C.F.R. § 416.924(a).  As a result of the Work Opportunity Act, a child claimant must meet or equal a listed impairment in order to qualify for SSI benefits.  *See Encarnacion*, 331 F.3d at 84; *see also Smith v. Commissioner*, 564 F. App'x 758, 762 (6th Cir. 2014); 20 C.F.R. § 416.924(d)(2).

By regulation, the ALJ utilizes six domains of functioning to assist her in determining whether the combination of a minor's impairments equal the severity of a listed impairment:  (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) the claimant's ability to care for herself; and (6) the claimant's health and physical well-being.  20 C.F.R. § 416.926a(b)(1).  Impairments must result in "marked" limitations in two domains or "extreme" limitations in one domain before they meet or equal a listed impairment's severity.  20 C.F.R. § 416.926a(d); *see Kelly v. Commissioner*, 314 F. App'x 827, 832 (6th Cir. 2009); *Encarnacion*, 331 F.3d at 85.  A "marked" limitation "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  "'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.'  It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."  *Id.*; *see Kelly*, 314 F. App'x at 832.  An "extreme" limitation is more than a "marked" limitation.  An "extreme" limitation is the rating given to the "worst limitations."  20 C.F.R. § 416.926a(e)(3)(i).  An "extreme" limitation "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  *Id*.  "It is the equivalent of the

functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id.*; *see Kelly*, 314 F. App'x at 832.

## Discussion

Plaintiff was born in December 1998. She was 12-years-old as of the date of the ALJ's decision. She was a school-age child on the date the application for SSI benefits was filed and she was an adolescent as of the date of the ALJ's decision. (A.R. 16). Plaintiff has never engaged in substantial gainful activity. (A.R. 16). The ALJ found that plaintiff had the following severe impairments: "microcephaly, learning disorder, and borderline intellectual functioning." (A.R. 16). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of any listed impairment. (A.R. 16-17). The ALJ found that plaintiff had less than marked limitations in the domains of attending and completing tasks, moving about and manipulating objects, caring for herself, and health and physical well-being. She had no limitation in interacting and relating with others. Her only marked limitation was in the area of acquiring and using information. (A.R. 20-25). Because plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of a listed impairment, the ALJ held that plaintiff was not disabled. (A.R. 25-26).

**1.**

Plaintiff argues that the ALJ committed reversible error when he found that she did not meet the requirements of listing 112.05(D) for mental retardation.[3] (Plf. Brief at 4-7). She

---

[3] In 2013, a revised version of the listing 112.05 went into effect which replaced the term "mental retardation" with "intellectual disability." *Peterson v. Commissioner*, 552 F. App'x 533,

argues that the "Social Security Administration relied on medical experts who [were] not trained in interpreting IQ scores" and that "only psychologists" are adequately trained in this area and "it was imperative for the Social Security Administration to seek the opinion of a trained professional in the field of Psychology to interpret Plaintiff's IQ scores properly." (Plf. Brief at 5). Plaintiff cites no legal authority in support of her arguments. Issues raised in a perfunctory manner are deemed waived. *Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012); *see Moore v. Commissioner*, No. 13-6654, __ F. App'x __, 2014 WL 3843791, at * 3 (6th Cir. Aug. 5, 2014).

Even assuming that plaintiff did not waive the issue, it is meritless. Listed impairments are impairments that are so severe that they render entitlement to benefits a "foregone conclusion." *Combs v. Commissioner*, 459 F.3d 640, 649 (6th Cir. 2006) (*en banc*). "In other words, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled." *Rabbers v. Commissioner*, 582 F.3d 647, 653 (6th Cir. 2009). It is well established that a claimant must show that she satisfies all the individual requirements of a listing. *See Elam*, 348 F.3d at 125. "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002); *see Ritchie v. Commissioner*, 540 F. App'x 508, 511 (6th Cir. 2013). "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam*, 348 F.3d at 125; *see Barnett v. Commissioner*, 2014 WL 3585892, at * 2-3.

---

536 n.1 (6th Cir. 2014). The substantive components of the listing remained unchanged. See Hickel v. Commissioner, 539 F. App'x 980, 982 n.1 (11th Cir. 2013). The terms "mental retardation" and "intellectual disability" can be used interchangeably because they refer to the same disorder. *See Talavera v. Astrue*, 697 F.3d 145, 148 n.2 (2d Cir. 2012). However, for the sake of clarity, courts generally use the old terminology when conducting appellate review of administrative decisions made before the terminology was revised. *See Peterson*, 552 F. App'x at 536 n.1; *Hickel*, 539 F. App'x at 982 n.1.

It was plaintiff's burden to present evidence establishing that she was disabled. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Wilson v. Commissioner*, 280 F. App'x 456, 459 (6th Cir. 2008). Further, it was plaintiff's burden to demonstrate that her impairments met or equaled the requirements of listing 112.05(D). Plaintiff presented very little evidence in support of her claim, and nothing capable of establishing impairments of listing-level severity. She filed school records in support of her claim. These included a psychological evaluation performed in October 2009, more than a year before the application for SSI benefits at issue was filed. A summary of this evaluation indicated that plaintiff had a full scale IQ score of 71. (A.R. 210-16).

School records from October 2010, indicated that plaintiff was in the 5th grade, attending special education classes, and was an "A & B student." (A.R. 165). Her Individualized Education Program (IEP) stated that plaintiff was a "happy 5th grade student who qualifie[d] for specific learning disabilities in reading comprehension, numerical operations and math reasoning." The school records note that plaintiff is a "hard worker and completes all assignments." She was making "remarkable progress" and was functioning "at the 5th grade level in both sight and word recognition, as well as in comprehension." (A.R. 180). She was at the "late 2nd grade level in math." (A.R. 185). The IEP noted that general education P.E. classes were "appropriate." (A.R. 180).

I. Zachary Dyme, M.D., was plaintiff's treating physician. On February 1, 2010, he noted plaintiff's earlier treatment history, which had been followed by a six-year absence during which plaintiff lived in Florida and Texas. (A.R. 169). On examination, plaintiff was cheerful and cooperative, and in no apparent distress. Motor examination revealed no clear focal weakness or

spasticity. Her reflexes were 2+ and symmetric. Her gait was normal and she was able to hop on either foot. She was able to read some mid-fourth grade words. (A.R. 169). Plaintiff did have "mild microcephaly," but there were no focal findings. (A.R. 170). A follow-up EEG was "mildly abnormal," and the low amplitude spikes observed were "rather benign in appearance" and may have been "so-called phantom spikes." (A.R. 172). On March 4, 2010, Dr. Dyme noted that the MRI performed on February 7, 2010, was normal, with the exception of a sinus retention cyst. (A.R. 171). On April 20, 2010, Dr. Dyme wrote that plaintiff's father had recently dropped off reports from plaintiff's school. Dr. Dyme noted that plaintiff had been "tested thoroughly and found to be in the borderline range of ability."[4] (A.R. 177). He did not recommend any further neurodiagnostic testing or treatment. (A.R. 177).

In December 2010, Paul Liu, D.O., a State agency psychiatrist and a specialist in child and adolescent psychiatry, reviewed plaintiff's file. Dr. Liu offered his opinion that plaintiff did not meet or equal the requirements of any listed impairment. (A.R. 54-60).

Ashir Kumar, M.D., reviewed plaintiff's records, heard her testimony, and provided a medical expert opinion at plaintiff's hearing. Dr. Kumar is a pediatrician. He agreed with Dr. Dyme's opinion that plaintiff had "mild microcephaly." (A.R. 47). In addition, he agreed with Dr. Dyme that plaintiff had "borderline" intellectual functioning. (A.R. 48). Dr. Kumar offered his opinion that plaintiff did not meet or equal the requirements of any listed impairment. (A.R. 48). Among other things, Dr. Kumar stated that plaintiff had a "less than marked limitation in moving about and manipulating objects." (A.R. 48).

---

[4]Borderline intellectual functioning is a "lesser diagnosis than mental retardation." *Sheeks v. Commissioner*, 544 F. App'x 639, 641 (6th Cir. Nov. 2013).

Plaintiff's representative failed to convince the ALJ that Doctors Dyme, Liu, and Kumar were not qualified to provide opinions that were entitled to weight in determining whether plaintiff met or equaled the requirements of a listed impairment:

> Claimant's attorney argues that neither Dr. Kumar, the pediatrician/medical expert present at the hearing, nor Paul Liu, DO, the State agency psychiatrist who reviewed the claimant's file in December 2010 (Exhibit 2A), has the training or knowledge to correctly interpret WISC-IV indexed scores in connection with the requirements in Listing 112.05D, which the attorney contends was written with prior WISC scores in mind, as prior scores were not indexed (Exhibit 10B). Even if I were to give credit to counsel's argument, the opinions of these two physicians are still supported by the medical evidence of record. The WISC testing was performed and interpreted by a licensed school psychologist, which is the only medical discipline counsel contends is qualified to interpret this type of testing. Without knowing counsel's medical/psychological qualifications, I suspect he is even less qualified than Dr. Kumar or Dr. Liu to interpret these index scores and determine whether or not the claimant's impairments meets or equals any listed impairment. Furthermore, despite the numerics, the school psychologist considered that claimant was functioning in the borderline range, and that her scores were a valid indication of her abilities. Moreover, the claimant's neurological functions do not show significant deficits, either in physical performance and abilities, or on EEG or brain MRI diagnostics, according to Dr. Dyme and Dr. Darios. Certainly, the pediatrician and child neurologist are sufficiently qualified to interpret the psychologist's written statements and assessments. For these reasons, the undersigned rejects counsel's suggestions in his letter of September 22, 2001.

(A.R. 16-17).

Plaintiff's attorney persists in the same vein on appeal, and he repeats the same unpersuasive and unsupported argument:

> The requirements of Listing 112.05 are based on an older method of scoring in the WISC, which provided Verbal, Performance, and Full Scale IQ scores. However, this is no longer used as the scoring method for IQ tests, and scores are now given for Verbal Comprehension Index, Perceptual Reasoning, Working Memory Index and Processing Speed Index. Therefore, as Plaintiff argued at the at the time of the hearing, as well as in a post-hearing memorandum, due to the fact that only psychologists are formally trained in the interpretation of IQ scores, and in light of the fact that the scoring methods have departed f[ro]m what listing 112.05 requires, it was imperative for the Social Security Administration to seek the opinion of a trained professional in [the] field of Psychology to interpret plaintiff's IQ scores properly. However, in this case, neither medical professional asked to review plaintiff's case [was] trained in the interpretation of IQ scores.

(Plf. Brief at 5). It was plaintiff's burden to present evidence establishing that she was disabled. *See Casey*, 987 F.2d at 1233; *see also Wilson v. Commissioner*, 280 F. App'x at 459. If a psychologist's opinion was as imperative as she now claims, it was incumbent upon plaintiff to have obtained a psychological evaluation and presented that evidence to the ALJ before he rendered his decision. Further, no "interpretation" of the IQ score emphasized by plaintiff was necessary. Plaintiff did not present any recent IQ score which may have required conversion into the scoring system which appears in Listing 112.05(D). Rather, plaintiff presented an old IQ score[5] based on the same system found in the listing. The score was above the score necessary to satisfy the IQ component of listing 112.05(D). A score above the listing's threshold fails to satisfy the requirements of the listing.[6] "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam*, 348 F.3d at 125.

Plaintiff makes a passing reference to a provision in Program Operations Manual System (POMS) applicable to "an adult listing" and argues that "it is reasonable to conclude this same consideration would apply to IQs for children." (Plf. Brief at 6). The court cannot overturn the ALJ's decision on the basis of this unsupported assumption. The Social Security Administration's Program Operations Manual System (POMS) is an internal agency manual. Its guidelines have no legal force, and failure to follow the POMS is not legal error. *See Davis v.*

---

[5]The ALJ is responsible for making factual findings regarding the validity of IQ scores, not the court. *See Baker v. Commissioner*, 21 F. App'x 313, 315 (6th Cir. 2001) (citing *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998)); *see also Hancock v. Astrue*, 667 F.3d 470, 474 (4th Cir. 2012) (collecting cases); *Lax v. Astrue*, 489 F.3d 1080, 1087 (10th Cir. 2007) (same).

[6]Plaintiff did not attempt to demonstrate how she met all the requirements of the listing. It was her burden on appeal to do so. *See Elam*, 348 F.3d at 125. Thus, no discussion of any element of listing 112.05(D) beyond a "valid verbal, performance, or full scale IQ of 60 through 70" is necessary.

*Secretary of Health & Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989) ("POMS is a policy and procedure manual that employees of the Department of Health & Human Services use in evaluating Social Security claims and does not have the force and effect of law[.]"); *see also Byers v. Commissioner*, No. 1:13-cv-339, 2014 WL 701597, at * 15 n.11 (W.D. Mich. Feb. 24, 2014) ("[T]he POMS do not bind the Commissioner and failure to comply with the POMS is not a basis for reversing an ALJ's decision."); *Fisher v. Commissioner*, No. 1:09-cv-1096, 2011 WL 926865, at * 8 (W.D. Mich. Feb. 28, 2011) (collecting cases). The scope of judicial review is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam*, 348 F.3d at 125. Plaintiff has not shown any error in the Commissioner's application of the law. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Commissioner*, 245 F.3d at 534. The ALJ's finding that plaintiff did not meet or equal the requirements of any listed impairment, including listing 112.05(D), is supported by more than substantial evidence.

**2.**

Plaintiff argues that the ALJ should have found that she had "marked" limitations in her ability to manipulate and move objects. (Plf. Brief at 7-9). The Social Security Act states that the finding of the Commissioner as to any fact, if supported by substantial evidence, "shall be conclusive." 42 U.S.C. § 405(g); *see McClanahan*, 474 F.3d at 833. It is not enough to point out evidence on which the ALJ could have based a decision in plaintiff's favor. "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence

supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d at 477; *see Barnett v. Commissioner*, 2014 WL 3585892, at * 2-3.  The findings on examination by Dr. Dyme, the opinions provided at the hearing by Dr. Kumar, and the other evidence cited in the ALJ's opinion (A.R. 18-19, 23-24) provide more than substantial evidence to support the ALJ's finding that plaintiff had a less than marked limitation in the domain of manipulating and moving objects.

### **Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated:   September 18, 2014         /s/  Phillip J. Green
                                     United States Magistrate Judge


### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  General objections do not suffice.  *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).